UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-0258 (DWF/SRN)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MOHAMED ABDI MOHAMED,<br>Defendant. | **Memorandum in Support of Motion to Dismiss Revocation Petition** |

Mr. Mohamed, through counsel, respectfully offers the following memorandum in support of his motion to dismiss the Petition on Supervised Release now on file in this case.

## INTRODUCTION

Mohamed Abdi Mohamed (Mohamed) does not have a home. His native land of Somalia is in turmoil. The United States has repeatedly sought Mr. Mohamed's removal. First, federal immigration authorities obtained a deportation order against him. The government then prosecuted and convicted him for making a false statement on an immigration form, which was done to secure employment. On November 27, 2002, Mr. Mohamed was sentenced to time served and a two year term of supervised release. The conditions of supervision included compliance with INS regulations, among which were its order of deportation and a directive that he seek residence elsewhere.

Having received these directives, Mr. Mohamed left the country to seek asylum in Canada.

Before leaving the United States, Mr. Mohamed was subject to conflicting sets of regulations. He had to follow his the supervised release conditions ordered by the Court and INS laws and regulations in general, and the final order of deportation against him in particular. The Supervised Release conditions ordered by this Court required that he report to the probation office in his district, that he remain law abiding and not commit another federal, state, or local crime and that he not illegally possess a controlled substance. He was also subject to standard conditions of supervision, which include not relocating outside the judicial district.[1] However, through these conditions and independently, Mr. Mohamed was also subject to the Immigration and Nationality Act, which dictates regulations on final orders of deportation and removal. Under the federal laws regulating immigration and the final order of removal, Mr. Mohamed had an affirmative duty to effectuate his departure or face prosecution under 8 U.S.C.A. § 1253(a)(1) (penalties for failure to depart). Under deportation orders, aliens may unilaterally depart from the country.

Faced with two conflicting sets of regulations, Mr. Mohamed abided by his duty to effectuate his departure. In so doing, he fulfilled the purposes behind the INS regulations regarding aliens subject to deportation. He should not face additional punishment for

[1] See 18 U.S.C. § 3583(d), 8 C.F.R. § 241.13(h).

acting in this manner. Further, as a practical matter, maintaining a supervised release term and an active warrant along with it serves no meaningful purpose. The petition should be dismissed.

## FACTS

Mr. Mohamed served a full sentence for his conviction while he was subject to a final order of deportation. Upon his release he could not return to his native land, Somalia, because it is not an "entity" for the purposes of removal proceedings. Indeed, federal judges both in Minnesota and Washington in the past held that aliens subject to deportation shall not be removed to Somalia. Mr. Mohamed lacked a nation to which he could return, but was still subject to deportation. The government could not hold Mr. Mohamed indefinitely without violating his due process rights, as set forth by the Supreme Court in Zadvydas v. Davis, 235 F.3d 398 (2002). The term and conditions of supervised release imposed at his sentencing therefore became active. The terms of supervision ordered by this Court made Mr. Mohamed subject not only to the orders of the court itself and the specific directions contained in its order, but also to the regulations surrounding final orders of deportation.

Under the Order setting the conditions of Mr. Mohamed's supervision, his first responsibility was to remain law abiding and refrain from committing any federal, state or local crimes. 18 U.S.C. § 3583(d). He also had to continue to seek travel documents,

appear upon request of the Service, provide information about his nationality and refrain from relocating outside of the judicial district. At the same time, under the terms of the final order of deportation, Mr. Mohamed had the obligation to take steps to effectuate his departure from the United States. The deportation order, above all, imposed an obligation that if there was another country into which he could enter, he was required to go there.

When Mr. Mohamed left the United States to seek asylum in Canada, he violated his duty to follow several conditions of the Supervised Release order but upheld his duty to facilitate his departure from the United States, a requirement embraced by other if the conditions.

## I. MR. MOHAMED WAS UNDER AN AFFIRMATIVE DUTY TO TAKE STEPS TO EFFECTUATE HIS DEPARTURE, WHICH HE FULFILLED BY LEAVING THE COUNTRY

In U.S. v. Heikkinen, the defendant had applied for certain travel documents, but the government had charged him, and a jury had convicted him, of wilfully failing to depart the United States within the six month period. 240 F.2d 94, 95 (7th Cir. 1957). The defendant urged that 8 U.S.C.A. § 156(c),[2] the section relating to penalties for failure to depart, did not create the affirmative duty to effectuate his departure. Id. at 100. The court upheld the conviction and rejected the defendant's argument, saying, "section

[2]That section has since been repealed and has become 8 U.S.C.A. § 1253(a)(1), which employs the exact same language as the section discussed above.

156(c) imposes upon the alien 'an affirmative duty and an obligation on his part to take specific steps toward effectuating his own departure from the United States and to that end to make timely application for travel and other documents.'" Id. (quoting the trial court decision).[3]

Just as the defendant in Heikkinen, Mr. Mohamed was under the affirmative duty to effectuate his departure. If he did not do so, he would face criminal prosecution under 8 U.S.C.A. § 1253(a)(1). Instead of violating that legal duty, Mr. Mohamed chose to leave the country voluntarily. While Mr. Mohamed could have continued to reside in the United States under Supervised Release and apply for travel documents, he chose instead to take the most efficient and effective means of effectuating his departure: physically leaving.

Just as Mr. Mohamed had an affirmative duty to effectuate his departure, he also had an explicit duty to abide by the rules and regulations of the Immigration and Naturalization Service.[4] While the INS regulations included staying within Minnesota, North Dakota or South Dakota, they also require that Mr. Mohamed assist the INS with obtaining travel documents for him for the purpose of facilitating his deportation.[5] The

---

[3] The Supreme Court reversed the Seventh Circuit's decision in that case, but on different grounds. Heikkinen v. U.S., 355 U.S. 273, 303. The Court did not overturn the affirmative duty to effectuate departure. Id.

[4] See Special Conditions of Supervised Release, item c.

[5] See Order of Supervision.

duty to leave the country necessarily conflicted with his duty to remain in the district. Facing conflicting regulations, Mr. Mohamed chose that which would allow him to leave the country the soonest.

## II. ALIENS MAY LEAVE THE COUNTRY UNILATERALLY WHEN THEY ARE SUBJECT TO A FINAL ORDER OF DEPORTATION

The Immigration and Nationality Act (I.N.A.), Title II, Chapter 4, section 241(a)(3) states, "if the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision." (Emphasis added). The plain language indicates that the I.N.A. contemplates unilateral departure by the alien: the alien has a choice of either leaving or being removed. While the alien who does neither of those will be subject to supervision, that action can ensure the actual departure of the alien from the country. See infra section III. 2 I.N.A. 4 section 241(a)(5) also shows that aliens subject to deportation may leave of their own volition, rather than wait to be removed by the government. It states, "If the Attorney General finds that an alien has re-entered the United states illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date." 2 I.N.A. 4 section 241(a)(5), (emphasis added). Though the rule itself applies when an alien attempts to re-enter the country, its message corroborates that of section (a)(3): an alien can depart voluntarily when under an order of removal.

The case law supports the message from the statutes. In Joo v. INS, the alien left the country after an immigration judge had entered an order of deportation and a denial of voluntary departure. 813 F.2d 211, 212 (9th Cir. 1987). Upon re-entering, he sought review of a judicial decision that had determined that Board of Immigration Appeals (BIA) had no jurisdiction to review the immigration judge's orders. Id. at 211. The Court of Appeals held that the alien's unilateral departure constituted a waiver of his right to appeal the deportation order and upheld the BIA's lack of jurisdiction.

In Mrvica v. Esperdy, 376 U.S. 560 (1964), a warrant for deportation had been ordered against the alien. Shortly thereafter he sailed from the United States as a crew member on a ship. When he returned to the United States, he was detained and new deportation proceedings were entered against him in 1951. Id. at 561. The court held that his departure from the country constituted deportation, despite the fact the alien had left voluntarily. Id. at 563.

The concepts of the statutes and cases above apply to the case at hand. Just like the alien in Joo, Mr. Mohamed received a final order of deportation, was denied voluntary departure and then unilaterally left the country. Although Mr. Mohamed left after his deportation period ended and the alien in Joo left before, he still undertook the same actions that were accepted by the court in Joo. Like the alien in Mrvica, Mr. Mohamed left under a final order of deportation. Under the reasoning of Mrvica, Mr. Mohamed will be subject to reentry prohibitions just as if he had been deported, but his departure from

the country in and of itself does not conflict with the deportation statutes and indeed it conforms to them.

## III. SUPERVISION EFFECTUATES DEPORTATION, WHICH HAPPENED WHEN MR. MOHAMED LEFT THE COUNTRY

The main condition of Supervised Release in criminal cases is that "the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. 18 U.S.C. § 3583(d). Having served his prison time and been released on Supervised Release, Mr. Mohamed was subject to the federal laws and regulations specified in his written statement of conditions. Because of his deportation status, however, Mr. Mohamed was also subject to INS regulations regarding Supervised Release. The two sets of regulations together have the purposes of ensuring public safety and effectuating the alien's lawful deportation from the country.

The factors to be considered for sentencing in criminal cases display the purposes behind imposing any criminal sanction, including Supervised Release: deterrence, protection of the public and educational and vocational training, medical care or correctional treatment. 18 U.S.C. § 3553(a)(2(B)-(D). The immigration laws add the goal of effectuating deportation. The additional factors to be considered in that code are as follows: "the likelihood of the alien's resuming or following a course of conduct which made or would make the alien deportable," 2 I.N.A. 4 section 243(a)(3)©, "the character

of the efforts made by such alien . . . to expedite the alien's departure from the United states," 2 I.N.A. 4 section 243(a)(3)(D), and "the reason for the inability of the government of the United States to secure passports, other travel documents, or removal facilities from the country or countries to which the alien has been ordered removed," 2 I.N.A. 4 section 243(a)(3)(E). Again, the code emphasizes public safety and ability to remove the alien from the country.

By leaving the country, Mr. Mohamed satisfied all of the criteria of both operating codes, despite the fact that he did not serve the entire Supervised Release sentence. He could not violate any United States laws; he did not affect public safety, not only because he was out of the country but also because his original crime was not violent or dangerous; and he could receive equal vocational and educational training in Canada. He also effectuated his removal in the most efficient means possible: he physically left the country. If Mr. Mohamed would have remained in the district, he would have satisfied the public safety purpose but would have had more difficulty in effectuating his departure from the United States. Under a purposive analysis of the statutes, Mr. Mohamed's unilateral action of departure fit his statutory duties much more that remaining in the district would have.

CONCLUSION

For the reasons set forth above, the Supervised Release Petition now pending in this case should be dismissed, and the warrant generated by the petition should be withdrawn.

Dated: December 27, 2006

Respectfully submitted,

***s/ Andrew H. Mohring***

Andrew H. Mohring
Attorney No. 190731
Attorney for Defendant
Office of the Federal Defender
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415